Roane, Judge.
The testimony of Mr. Pollard is decisive that Mr. Smyth had the identical lands now in question, in view when he was introduced to Mr. M’Rae; and that being, then, well convinced in his own mind, as well as by the information derived from counsel, that the lands lay in Virginia, he had determined under that impression to engage with M’Rae on the terms proposed.
That these very lands were in contemplation of both parties when they made the contract, is also inferrible (taken in connection with Pollard’s testimony) from this expression in the written contract itself; “ and whereas said Alex-under Smyth hath made a discovery of 300,000 acres of unappropriated lands lying within the limit§ of Virginia.” The idea too, is further confirmed by the circumstances of the entry, for Swan, being made, by Smyth, within a very short time, after the contract was made upon the very lands now in question.
However general then the written contract may be, it is clear, that it was agreed and understood between the contracting parties, that the very lands now in question were the lands to be located by the one for the other.
*469 If this be the case; if M’Rae had a right to an entry of these very lands under the agreement, a decision of this cause as to the right of an agent to withdraw or transfer entries, will not extend to cases of general contracts to furnish a given quantity of land, but not referring to any particular tract or parcel.
If Mr. M’Rae was entitled to come upon this very land, under his agreement with Smyth, however the latter, on finding the title of Virginia thereto not to be good, would have had a right to call on M’Rae to make his election, either to abide by the election, or permit him to change it, clearly it would follow that such an exchange could not be made without such permission, under the understanding of the parties, at the time of making the agreement | and this idea is much strengthened, in consequence of an inchoate right having been obtained for Swan, by the entry for the specific land in question.
M’Rae, in this view of the subject, may have similar and as strong reasons for insisting on this land as those urged by Walcott for insisting on his part; and the question is, whether, as Smyth had committed himself in his contract with M’Rae with respect to these very lands, he can, without M’Rae’s consent, deprive him of them ? In the event of Smyth’s finding out, or thinking himself unsafe, as to these lands under his contract, a plain mode was open to him by consulting M’Rae, which however he has not done.
M’Rae however has made his election by bringing this bill, and having so made it, he shall be in precisely the same situation, as if he had made it on the application of Smyth ; that is to say, Smyth shall be absolved from all liability as to the title of the lands, in case it should not be conformable to that stipulated for by the contract.
But it is argued that this right of M’Rae and Swan is affected by a fraud on the part of their agent, who had made a prior engagement in favour of Walcott and others, for the same lands, and that Swan and M’Rae his employers had in construction of law notice of the prior title of Walcott and his companions.
*470 However Smyth may have laid himself liable to Walcott under his first contract, in which he covenanted “ not to locate any lands within the boundaries described for any other person, unless Walcott & Co. failed in performance of their part of the agreementyet, as it is stated by Smyth that the tract contemplated contained at least a millioti of acres; and as Walcott & Co. only contracted absolutely to take 500,000 acres, there was a considerable quantity of land not specifically and particularly bound by the first contract, for the second to operate on. At least, those decisions, which apply on this point with respect to titles to a definite ascertained portion of property, will not extend to a vague and indefinite contract of this kind. For it is the leading principle on this subject, that in order to affect a subsequent purchaser on the ground of implied notice of a former title, there must be something to lead such purchaser distinctly to a knowledge of such title with reference to the identical specific property in question.
On these grounds, it appears to me that the decree is right; but, in carrying the appellee’s title into a legal grant, the original entry on his behalf should be regarded in the same manner as if the transfer to Walcott had never been made.
Fleming, Judge. The appellees are clearly entitled to the land in controversy. That M’Rae actually stipulated for a location at that place is abundantly proved; and his title ought not to be defeated, unless a better were shewn; which has not been done. Indeed the circumstances give a very unfavourable aspect to the claim of Walcott; who contracted with Smyth to remove the location made for Swan, and to lay his warrants upon the same land. This attempt to defeat the adversary claim, so far destroyed his own ; for the second contract was to that extent, a waiver of the first. I am therefore of opinion, that the decree is substantially right. But the appellees must release Smyth from his warranty, and pay him the monies advanced towards perfecting théir title, with interest.
*471 Lyons, Judge. I agree with the other judges in the principles laid down by them; and the following decree is to be made:
“ This day came the parties by their counsel, and the court having maturely considered the transcript of the record and the arguments of the counsel, is of opinion, that so much of the decree aforesaid, as directs the appellant to assign to the appellee, James Swan, all the appellant’s right and title to the lands in the county of Russel, in the decree mentioned, before the appellees pay to the appellant the money advanced by him for surveyor’s and register’s fees on account of the said land, is erroneous: And that the said decree is also erroneous in not directing the appellees, on receiving the assignment aforesaid, to release and discharge Alexander Smyth, in the proceedings named, from all covenants and agreements on his part, contained in the articles entered into by him with the appellee Alexander M’Rae, on the 14th of September, 1795, referred to in the decree, so far as the said articles relate to the quantity, title, soil, or description of the lands covenanted to be located and surveyed for the appellees, by the said Alexander Smyth. But that there is no error in the residue of the said decree. Therefore, it is decreed and ordered, that so much of the said decree as is herein stated to be erroneous, be reversed and annulled. That an account be taken of the money advanced by the appellant and Alexander Smyth, or either of them, for surveyor’s and register’s fees; and that, on payment thereof, with interest, the appellant assign to the appellee, James Swan, all the appellant’s right and title in and to the three hundred thousand acres of land, part of the six hundred and fifty thousand acres of land, certified to have been sur? veyed for him and compleated the 17th day of December, 1795, by the surveyor of Russel county: And that after such assignment shall have been duly made, and approved by the court of chancery, that the appellees release to Alexander Smyth, all actions and suits, and fully discharge him from all his covenants contained in the agreement, made be *472 tween him and the appellee Alexander M’Rae, on the 14th of September, 1795, before mentioned, so far as the articles relate to the quantity, title, soil, or description of the lands covenanted to be located and surveyed for the appellees by the said Alexander Smyth, within such time as the court of chancery shall direct: And that the same time be allowed the appellee, James Swan, to release his right and title to the lands in the county of Lee, according to the decree of the said court of chancery. That the residue of the said decree be affirmed; and that the appellees pay to the appellant his costs by him expended in the prosecution of his appeal aforesaid here.”
N. B. — The above report was mislaid when the case was published in 2 Call, 298: but having been since found, it was thought that it would be agreeable to the profession to see the opinions of the judges at large; and therefore they are now inserted.